**INTERNATIONAL FIDELITY INSURANCE COMPANY, Plaintiff,**

v.

**David CROSLAND, as Acting Commissioner of the Immigration and Naturalization Service and George Vician as District Director of the New York District of the Immigration and Naturalization Service, Defendants.**

**No. 79 Civ. 3066 (PNL).**

United States District Court, S. D. New York.

June 3, 1980.

Nicholas Paul Altomerianos, New York City, for plaintiff.

Katherine J. Trager, Sp. Asst. U.S. Atty., New York City, for defendants.

## MEMORANDUM ORDER

LEVAL, District Judge.

This is a declaratory judgment action. brought by a bonding company which is the obligor on an appearance bond posted pursuant to § 242(a) of the Immigration and Nationality Act, 8 U.S.C. § 1252(a), seeking review of the defendant Immigration and Naturalization Service's determination that the bond was forfeited, and an order reinstating the bond. Both parties move for summary judgment. Jurisdiction appears to be premised upon the Administrative Procedure Act and § 279 of the Immigration and Nationality Act, 8 U.S.C. § 1329 (1978).

George Chrisis, a Greek national, entered the United States as a crewman and failed to depart within the authorized time. On July 20, 1978 Chrisis was apprehended by the INS and served with an order to show cause why he should not be deported and a notice of hearing set for the following day. On July 21, 1978, the plaintiff, International Fidelity Insurance Company, posted a $3,500 bond, conditioned upon Chrisis' appearance upon "each and every request" of the INS. The bonding company was then served with a notice requiring it to produce Chrisis at a deportation hearing on July 28, 1978. Chrisis himself was not served with notice of the scheduled hearing. On July 28, 1978, Chrisis failed to appear. On August 8, 1978, the INS notified the plaintiff that the bond was breached and declared forfeited. The plaintiff appealed this determination unsuccessfully to the Regional Commissioner. This action followed.

Congress granted the INS the power to establish such regulations as it deems necessary to administer the immigration laws on behalf of the Attorney General, 8 U.S.C. § 1103 (1978). The INS may set the terms and conditions of delivery bonds, 8 C.F.R. § 242.2(a) (1979). A regulation established by the INS, 8 C.F.R. § 103.6(e) (1979), provides that a delivery bond may be forfeited if there has been a "substantial violation of the stipulated conditions."

The plaintiff contends that the violation of the appearance bond was not "substantial."

According to plaintiff, the failure of Chrisis to appear at the scheduled hearing was an accident which occurred as follows: the INS, in accordance with its usual procedures did not notify the alien of his hearing, but notified only the bonding company. The notice given was of no more than a week. The practice followed by the bonding company, in order to comply with tight time schedules, is to give telephonic notice to counsel for the aliens whose hearings have been scheduled. The contention made here was that the lawyer representing the alien at the same time received from the bonding company several notices respecting various alien clients and by oversight and confusion neglected to notify Chrisis of the hearing. Plaintiff points out that Chrisis did not abscond; to the contrary immediately upon learning of the missed hearing through the notification of breach, his attorney contacted the INS offering to have the alien appear upon request.

At the administrative appeal, the hearing officer made no findings of fact as to plaintiff's claims, apparently because he regarded such contentions as irrelevant. He wrote in answer to the plaintiff's claimed excuse for the missed appointment:

We are not inclined to accept counsel's argument for to do so would upset the administration of the Immigration and Naturalization laws. Officials of this Service could not depend on attendance at hearings of persons charged with the violation of Immigration and Naturalization laws. Such persons could disregard or ignore notices of hearings with impunity secure in the knowledge that the penalty provided for in their delivery bond could not be forfeited for such action on their part. The Courts have taken cognizance of the confusion which would result if aliens could be surrendered at any time it suited their or surety's convenience. . . . Delivery bonds are violated if the obligor fails to cause the alien to be produced to the Immigration officer upon

each and every request until deportation proceedings are finally terminated . . . . On July 28, 1978, the obligor failed to produce the alien in accordance with the terms of the bond which constituted a breach of the bond.

The INS contends that the Regional Commissioner's decision in this matter was consistent with the INS' past construction of § 103.6(e). In *Matter of Nguyen*, Immigration Decision # 2344 (1975), the Commissioner found that substantial violations are those which "constitute a willful departure from the terms or conditions of the bond or the failure to comply or adhere to the essential elements of those terms or conditions." *See International Fidelity Insur. Co. v. Chapman*, 76 Civ. 1485 (S.D.N.Y.1977) (relying on *Nguyen*). The INS contends that the obligor's failure to deliver the alien to his July 28 hearing under the circumstances of this case represents a violation of an essential term or condition of the bond, notwithstanding the obligor's protestations of good faith.

■ I recognize that reviewing courts are obliged to "shows great deference to the interpretation given [an administrative regulation] by the officers or agency charged with its administration." *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). The deference properly accorded to an administrative construction of a regulation is not, however, absolute. An administrative interpretation is "of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Udall v. Tallman*, 380 U.S. at 16–17, 85 S.Ct. at 801; *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 413–14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). Without deciding whether *Nguyen*'s construction of § 103.6(e) is consistent with the language of the regulation or whether the particular facts and circumstances of this case cannot as a matter of law amount to a substantial violation, I find the construction of § 103.6(e) suggested by the Commissioner in this case inconsistent with the terms of the regulation.

The opinion of the Commissioner reasons that if good excuses were accepted, then persons without excuses "could disregard or ignore notices of hearings with impunity . . . [and] aliens could be surrendered at any time it suited their . . . convenience . . . ."

First of all, this reasoning is excessively alarmist and illogical. It does not follow that the acceptance of a credible and valid excuse would result necessarily in lawlessness.

Nor, in my view, does the examiner's interpretation comport with the terms of the regulation.

Section 103.6(e) was amended in 1974. 39 Fed.Reg. 12334 (April 5, 1974). The prior version had permitted declaration of breach of an appearance based upon violation of its terms. 31 Fed.Reg. 11713 (Sept. 7, 1966). The amendment required a *substantial* violation as a basis for forfeiture.

The opinion of the Commissioner here reads the requirement of "substantial" violation out of the regulation, for he considers any violation a warrant for forfeiture.

■ It is for the agency, and not the court, to formulate standards as to what violations should be deemed substantial. *Udall v. Tallman, supra*. But the agency exceeds its power as established by its own regulation if it declares any violation to be substantial. The addition of the "substantiality" requirement would seem to require some evaluation of such factors as the extent of the breach, whether it was intentional or accidental on the part of the alien, whether it was in good faith and whether the alien took steps to make amends or put himself in compliance.

The importation of the substantiality requirement also presumably involved a recognition that such appearance bonds are not simply commercial contracts between the contracting agency and a guarantor. Characteristically surety companies do not issue such bonds without being fully secured by the alien. Accordingly they are likely to have little interest in the issue of forfeiture. In this case, for example, the surety, although nominally the plaintiff, has in fact made no appearances to contest the forfei-

ture. Instead it has simply permitted its interest to be represented by the alien, who is indeed the true party in interest, since it is his liberty and his property which are in question.

Nothing in this opinion is intended to suggest that the Immigration Service should be lenient or weak in administering appearance bonds. I recognize the great difficulties and frustrations involved in managing this complex system, as well as the importance of exacting strict compliance with appointments set for hearings. As the regulation states, substantial violations appropriately warrant forfeiture. But that is not to say that every violation is substantial, regardless whether trifling, accidental or incurred in good faith.

The judgment of the Regional Commissioner is vacated and the matter is remanded in order that the examiner can determine what were the facts of the violation and whether, on such facts, the violation was "substantial" within the meaning of 8 C.F.R. § 103.6(e).

SO ORDERED.