## INTERNATIONAL FIDELITY INSURANCE COMPANY, Plaintiff,

### v.

David CROSLAND, as Acting Commissioner of the Immigration and Naturalization Service and John J. Gaffney, as Acting District Director of the New York District of the Immigration and Naturalization Service, Defendants.

80 Civ. 6338 (GLG).

United States District Court,
S. D. New York.

June 26, 1981.

Barst & Mukamal, New York City, for plaintiff; Nicholas Paul Altomerianos, New York City, of counsel.

John S. Martin, Jr., U. S. Atty., S. D. N. Y., New York City, for defendants; Michael D. Patrick, Sp. Asst. U. S. Atty., New York City, of counsel.

## OPINION

GOETTEL, District Judge:

Plaintiff International Fidelity Insurance Company ("International"), an obligor of a $3000 immigrant delivery bond, posted pursuant to section 242(a) of the Immigration and Nationality Act, 8 U.S.C. § 1252(a), has brought this action seeking review of the defendants' determination that the bond has been breached, and for an order cancelling the bond. Having agreed that there are no genuine issues of fact to be tried, the parties have cross-moved for summary judgment.

Evangelo Hatzis ("Hatzis"), a Greek national, entered the United States illegally in November, 1974, when, as a crewman on the Greek ship "Queen Anne Marie," he jumped ship. The Immigration and Naturalization Service ("INS") arrested him in July, 1977. INS subsequently released him under the subject $3000 immigration bond

issued by the plaintiff insurance company. INS did not issue its final order for Hatzis's deportation until June 20, 1979. After Hatzis failed to voluntarily depart, a warrant for his arrest and immediate deportation was issued. On November 13, 1979, INS sent a letter, certified mail, return receipt requested, to the plaintiff, notifying it that it must produce Hatzis on November 20, 1979.[1] The plaintiff failed to produce him and Hatzis has yet to surrender to INS authorities.

Thereafter, INS declared that the bond had been breached. The plaintiff appealed to the Regional Commissioner, claiming that it did not receive the 72 hours advance notice to which it claims it is entitled under the INS regulations. See 8 C.F.R. § 243.3 (1981). (The plaintiff claims that it did not receive the notice until November 19, 1979, one day before it was required to produce Hatzis.) The Regional Commissioner dismissed the appeal, ruling that the notice to the plaintiff by certified mail, return receipt requested, fulfilled the requirements of the regulations. International thereafter filed this action for a declaratory judgment, seeking review of INS's decision.

The bond, formally entitled a "Bond Conditioned for the Delivery of an Alien," provided that:

[T]he obligor hereby furnishes such bond with the following conditions: if said alien is released from custody and if the above mentioned obligor shall cause the said alien to be produced or to produce himself to an immigration officer of the United States upon each and every request of such officer until deportation proceedings in his case are finally terminated or until the said alien is actually accepted by such immigration officer for detention or deportation, then this obligation shall be void; otherwise it shall immediately become due and payable.

Under the regulations promulgated by INS, a bond is not breached unless there has been a "substantial violation" of the terms of the bond. 8 C.F.R. § 103.6(e)

---

1. Notice was also sent to Hatzis. He apparently had already absconded.

(1981). International argues that there has not been a "substantial violation" of the terms of the bond because it was not given 72 hours advance notice that the alien was to be produced. INS responds that the obligor is not entitled to 72 hours advance notice. In addition, INS argues that International constructively received four days notice, since the regulations provide for notice to be calculated from the date of mailing, rather than the date of receipt. *See* 8 C.F.R. § 103.5a (1981).

Section 243.3 of the INS regulations provides, in pertinent part:

> Once an order of deportation becomes final, an alien, not in the physical custody of [INS], shall be given not less than 72 hours advance notice in writing of the time and place of his surrender for deportation. If the alien fails to surrender as directed, he shall be deported without further notice when located. . . . The advance notice requirement above does not preclude taking an alien into custody at any time, including any time within the 72 hour period, if his being at large constitutes a danger to public safety or security, or the district director has reason to believe the alien is likely to abscond. . . . However, in such an instance, the alien's deportation shall not be effected prior to the expiration of 72 hours from the time of apprehension or of the 72 hours notice period, whichever is less.

8 C.F.R. § 243.3 (1981).

■ International contends, on the basis of this regulation, that the obligor of a maintenance bond is also entitled to 72 hours advance notice. INS, however, interprets this provision as applying only to aliens.[2] An agency's interpretation of its own regulations should, of course, be af-

forded great deference, *see Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801–802, 13 L.Ed.2d 616 (1964); *National Wildlife Federation v. Benn*, 491 F.Supp. 1234, 1245 (S.D.N.Y. 1980), and must be applied unless such interpretation is plainly erroneous or inconsistent with the regulation. *Mohomed v. Vician*, 490 F.Supp. 954, 957 (S.D.N.Y. 1980). *See International Fidelity Insurance Company v. Crosland*, 490 F.Supp. 446 (S.D.N.Y. 1980). International has not cited any authority that indicates that INS's interpretation is clearly erroneous.[3] Indeed, the interpretation that only aliens are entitled to the 72 hours advance notice is perfectly consistent with the face of the regulation. Consequently, the Court will accept this interpretation of the regulation.

■ Moreover, International would be in breach of the bond even if it had been entitled to 72 hours advance notice. The regulations provide for personal service of notice of any proceeding initiated by INS which might have an adverse effect. 8 C.F.R. § 103.5a(c)(1) (1981). Personal service specifically includes mailing by certified mail, return receipt requested, 8 C.F.R. § 103.5a(a)(2)(iv) (1981), in which case three days are added to the prescribed period of notice. Service is "complete upon mailing." 8 C.F.R. § 103.5a(b) (1981). Thus, INS constructively gave International four days notice, since it mailed the notice seven days before Hatzis was to be produced. The fact that International may not have received the letter until one day before it was required to produce Hatzis is technically irrelevant to the calculation of notice. *See generally Kiki Undies Corporation v. Promenade Hosiery Mills, Inc.*, 308 F.Supp. 489, 495 (S.D.N.Y.), *aff'd in part and rev'd in*

---

**2.** At oral argument, the Assistant United States Attorney representing INS explained that the purpose of the 72 hours advance notice is to afford the alien an opportunity to contest his deportation before he is actually deported. Thus, while an alien may be taken in less than 72 hours if the district director believes that he will abscond, or if his being at large constitutes a public danger, the alien may not be deported until the expiration of 72 hours from the time

of apprehension or of the 72 hours notice period, whichever is less. 8 C.F.R. § 243.3 (1981).

**3.** International cites a 1975 decision of the Regional Commissioner for the proposition that it is entitled to 72 hours advance notice. That case is factually distinguishable, however, in that the alien was ultimately produced. Moreover, the Regional Commissioner may modify and reverse previous decisions. *See* 8 C.F.R. § 103.3(e) (1981).

*part on other grounds,* 411 F.2d 1097 (2d Cir. 1969), *cert. denied,* 396 U.S. 1054, 90 S.Ct. 707, 24 L.Ed.2d 698 (1970).

While INS's interpretation of its regulations might appear to be severe, it is important to note that International has *never* produced the alien. International does not claim that it would have been able to produce Hatzis had it received 72 hours advance notice, nor does it claim that it would be able to produce him if it had the opportunity to do so now. This is not a situation in which the alien is produced shortly after the required time of production. In that instance, although the obligor might be in technical violation of the bond, it might not be in breach because there has not been a "substantial violation" of the terms of the bond. *See generally International Fidelity Insurance Company v. Crosland, supra.* That is not the case here, however.

Accordingly, the defendants' cross-motion for summary judgment is granted, and the plaintiff's motion for summary judgment is denied. The action is dismissed.

SO ORDERED.