**Joy McLEAN, Plaintiff,**

v.

**William S. SLATTERY, District Director of the New York District of the Immigration and Naturalization Service, and Immigration and Naturalization Service, Defendants.**

**No. CV–92–2498 (RJD).**

United States District Court,
E.D. New York.

Dec. 14, 1993.

Robert Belfort, The Legal Aid Soc., Brooklyn, NY, for plaintiff.

Scott Dunn, Sp. Asst. U.S. Atty., U.S. Atty., E.D. New York, Brooklyn, NY, for defendants.

1. The complaint states that Ms. McLean wrote to the INS office in Louisiana and never received a

## MEMORANDUM AND ORDER

DEARIE, District Judge.

Plaintiff brings this action pursuant to 28 U.S.C. § 1346(a)(2) and 28 U.S.C. § 1352 to recover the $3000 she posted as a cash delivery bond on December 3, 1987 on behalf of her cousin, Derrick Abrams. The Immigration and Naturalization Service ("INS") sought to deport Mr. Abrams to his native country of Guyana following his conviction for cocaine trafficking. The INS declared the bond breached after Mr. Abrams failed to appear for an interview scheduled for May 6, 1988. Plaintiff alleges that Mr. Abrams was being held by the federal government at the time he was required to appear. She claims that because he was incarcerated, his failure to appear did not constitute a substantial violation of the conditions of the bond. She further claims that the INS's failure to return the posted funds constitutes a violation of the bond agreement.

Defendants have moved for summary judgment dismissing plaintiff's complaint for failure to exhaust administrative remedies. For the reasons set forth below, defendants' motion is granted.

### Background

Plaintiff concedes that in May of 1988 she received notice of the decision that the delivery bond she posted on December 3, 1987 had been breached. The notice advises that to appeal the decision, a form, enclosed with the notice, and a fee should be filed within fifteen days with the INS. The notice further provides that "[i]f no appeal is filed within the time allowed, th[e] decision is final." Plaintiff did not appeal the decision.

Plaintiff admits that she had no contact with Mr. Abrams between the time she posted the bond and the time she received the notice that the bond had been declared breached. (See McLean Aff., ¶ 7.) According to plaintiff, a couple of months after she received notice of the determination, Mr. Abrams contacted her and told her that he was incarcerated on May 6, 1988, the date of the interview. Plaintiff then made efforts to reclaim the bond. She visited the INS office at 26 Federal Plaza on several occasions, and she called [1] the INS office in Louisiana. She

response. (See Complaint, ¶ 17.)

was told, she maintains, that there was nothing anyone could do to help her. (*See* McLean Aff., ¶ 9, 11–12.) In May of 1992, four years after plaintiff received notice that the bond was declared breached, she filed this complaint.

## Discussion

■ The parties agree that although INS regulations provide for administrative appeals of determinations that a bond has been breached, the regulations do not require such appeals to be taken as a precondition to judicial review. Further, administrative appeals are not statutorily mandated. In contrast, with respect to orders of deportation and exclusion, the right of judicial review is forfeited pursuant to 8 U.S.C. § 1105a(c) if administrative remedies available as of right are not exhausted. *See* 8 U.S.C. § 1105a(c) ("An order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right. . . ."); 3 Charles Gordon & Stanley Mailman, Immigration Law and Procedure § 81.02[2], at 81–28 to 81–29 (1993).

■ Because exhaustion of administrative remedies is not mandated by statute, whether exhaustion is required is a matter within the Court's discretion. *See Hrubec v. Immigration and Naturalization Serv.,* 828 F.Supp. 251, 253 (S.D.N.Y.1993) ("The subject matter jurisdiction of the [district court] with respect to [breach] determinations of the INS is discretionary."). Nevertheless, the Court must exercise its discretion in a manner consistent with congressional intent. *McCarthy v. Madigan,* — U.S. —, —, 112 S.Ct. 1081, 1086, 117 L.Ed.2d 291 (1992). Plaintiff argues that against the backdrop of 8 U.S.C. § 1105a(c), the absence of an exhaustion requirement in 8 U.S.C. § 1252 indicates that Congress intended not to require exhaustion of administrative appeals of bond breach determinations. Section 1252 provides for an alien's release on bond pending a determination of deportability. However, the section, which governs the apprehension and deportation of aliens, sets forth procedures pertaining to orders of deportation, not

bond breach determinations. The fact that it does not contain language precluding judicial review of breach determinations that have not been administratively appealed is not authority for the proposition that Congress intended for there to be no exhaustion requirement.

■ In exercising its discretion, the Court must "balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *McCarthy v. Madigan,* — U.S. at —, 112 S.Ct. at 1087. The exhaustion doctrine "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *Id.* — U.S. at —, 112 S.Ct. at 1086. With respect to protecting administrative agency authority, "[e]xhaustion concerns apply with particular force when the action under review involves exercise of the agency's discretionary power or when the agency proceedings in question allow the agency to apply its special expertise." *Id.* (citing *McKart v. United States,* 395 U.S. 185, 194, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969)). Judicial efficiency is promoted in that "exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration, especially in a complex or technical factual context." *Id.* — U.S. at —, 112 S.Ct. at 1087.

■ Although there are only a few bond breach cases that directly address the issue of exhaustion, in each of those cases the court has noted that when claims require factual determinations and are not inherently legal, requiring exhaustion of administrative remedies is particularly appropriate. *See Hrubec,* 828 F.Supp. at 253; *Stuyvesant Ins. Co. v. District Director, Immigration and Naturalization Serv.,* 407 F.Supp. 1200, 1204 (N.D.Ill.1975); *Ciniglio v. Thornburgh,* No. Civ.A. 90–3939, 1991 WL 276081, *2–3 (E.D.La. December 17, 1991). When claims primarily concern questions of fact, "the agency has a strong interest in making its own factual record, a factor that in some cases may outweigh the litigant's need for judicial resolution." *Hrubec,* 828 F.Supp. at

253. Moreover, although the question of substantial compliance with the terms of a bond is legal in character, "the equitable application ... of the concepts embodied [in the term substantial compliance] may require knowledge, immediately possessed by the agency, of an established custom or usage relating to the particular bond presented.... [T]he question of substantial compliance ... should, therefore, be subjected to administrative review." *Stuyvesant,* 407 F.Supp. at 1205; *see also Hrubec* 828 F.Supp. at 253 (The determination of whether or not the terms of a bond were substantially complied with "requires consideration of 'such factors as the extent of the breach, whether it was intentional or accidental on the part of the alien, whether it was in good faith and whether the alien took steps to make amends or put himself in compliance.' *International Fidelity Ins. Co. v. Crosland,* 490 F.Supp. 446, 448 (S.D.N.Y.1980). Such an analysis is a factual determination that requires agency expertise."). Thus, because the question of substantial compliance involves agency expertise, exhaustion may still be appropriate in cases in which the underlying facts are not in dispute. *See Stuyvesant,* 407 F.Supp. at 1204–05 (exhaustion requirement imposed although no questions strictly factual in nature remained for agency determination).

■ The existence of threshold questions of fact in this case favor requiring exhaustion. Plaintiff's claim that she did not substantially violate the terms of the bond is based on her contention that Mr. Abrams was incarcerated at the time of the scheduled interview. However, Mr. Abrams's whereabouts at the time of the interview are in dispute. Plaintiff has submitted a letter, dated October 24, 1991, issued by the United States Department of Justice in response to an inquiry from the criminal division of The Legal Aid Society, indicating that Mr. Abrams was incarcerated in F.C.I. Raybrook from May 27, 1987 through September 7, 1988. (*See* Belfort Decl., ¶ 5; Letter from Mr. Paul M. Schultz of the Bureau of Prisons, Ex. C to Belfort Decl.) Defendants contend that the letter is incorrect. They have submitted a declaration from the Chief of the Inmate Monitoring Section of the Bureau of Prisons indicating that Mr. Abrams was released from Raybrook on November 23, 1987, and did not reenter the Bureau of Prisons system until September 7, 1988. (Simons Decl., ¶ 3.) Because Mr. Abrams would not have been in need of a delivery bond on December 3, 1987 if he were in continuous custody from May 27, 1987 to September 7, 1988, it is apparent that the information contained in the letter submitted by plaintiff is incorrect. Plaintiff nevertheless insists that her cousin was in custody at the time of the scheduled interview.

In addition, although not raised in the complaint as a ground for relief, plaintiff alleges that she never received notice of the May 6, 1988 interview date, raising an additional question of fact. Defendants contend that notice was sent to plaintiff by certified mail and that no record exists of the notice having been returned undelivered. However, defendants do not provide a return receipt evincing delivery of the notice. Instead, they explain that it is the policy of the INS to retain a copy of a notice in an alien's file only after the notice has been either personally delivered or mailed, and they contend that because a copy of the notice appears in Mr. Abrams's file, it was mailed. (*See* Cleary Decl., ¶ 5.) The factual questions of whether Mr. Abrams was in custody and whether plaintiff received notice of the interview date must be resolved before the question of substantial compliance may be reached.

Plaintiff argues that because only a paper review of a breach determination is available to the obligor of an immigration bond, requiring exhaustion would not advance the institutional interest in the creation of a factual record that could be relied on by a reviewing court. However, the lack of a hearing as part of the administrative process does not preclude the development of a formal factual record. With respect to the primary issue in this case, it does not appear that a hearing would be required to make a determination as to whether Mr. Abrams was incarcerated at the time of the scheduled interview.

Plaintiff's interest in prompt access to a federal judicial forum does not outweigh the

institutional interests present favoring exhaustion. Despite plaintiff's *in forma pauperis* status, plaintiff cannot claim to be in danger of suffering irreparable harm as a result of being unable to secure immediate judicial review. Indeed, plaintiff waited four years before bringing this action. Further, the INS is competent to adjudicate the question of whether plaintiff substantially violated the conditions of the bond and is empowered to grant the relief plaintiff seeks. Finally, there is no suggestion that the relevant administrative body is biased or has otherwise predetermined the issues presented. *See McCarthy v. Madigan,* —— U.S. at ——, 112 S.Ct. at 1087–88 (setting forth the three broad sets of circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion).

Plaintiff contends that the notice of the breach determination did not adequately apprise her of the necessity of filing an appeal and that therefore her interests outweigh the institutional interests favoring exhaustion. She argues that in balancing the interests, this Court should follow the holding of *Ciniglio.* However, plaintiff mischaracterizes the holding in that case. According to plaintiff, the *Ciniglio* court held that it had jurisdiction over the bond claim of Ciniglio, the alien, despite Ciniglio's failure to exhaust administrative remedies on the grounds that Ciniglio did not receive clear notice of the necessity of administratively appealing the breach determination and that Ciniglio had an overriding interest in a judicial resolution because the period within which to appeal had lapsed. (Mem. in Opp'n, at 9–10.) However, in *Ciniglio* the sufficiency of the notice provided by the bond breach determination form itself was not in issue. Rather, Ciniglio did not receive any notice whatsoever of the breach determination. In addition, the bonding company that posted the bond on behalf of Ciniglio failed to appeal the breach determination, thereby forfeiting Ciniglio's right to appeal without his knowledge. The company then successfully sued Ciniglio for the amount of the bond. The court found that because the period for taking an administrative appeal had passed, Ciniglio had a significant interest in a judicial resolution. The court found further that the agency had no countervailing interest in making a factual record because the parties in *Ciniglio* presented a joint stipulation of facts to the court. *Ciniglio,* 1991 WL 276081, at *1–3.

Moreover, in *Ciniglio* the plaintiff sought a declaratory judgment pursuant to the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* (the "APA"). Under section 704 an administrative appeal is not a prerequisite to judicial review of agency action unless "the agency otherwise requires by rule and provides that the action meanwhile is inoperative." 5 U.S.C. § 704 (1977); *see also Ciniglio,* 1991 WL 276081, at *2; *Stuyvesant,* 407 F.Supp. at 1204. Construing section 704, the Supreme Court recently held that in actions brought under the APA, federal courts may not impose an exhaustion requirement where exhaustion is not expressly required by statute or agency rule. *See Darby v. Cisneros,* —— U.S. ——, ——, 113 S.Ct. 2539, 2548, 125 L.Ed.2d 113 (1993). However, the Supreme Court clearly stated that the exhaustion doctrine continues to apply as a matter of judicial discretion in cases not governed by the APA. *See Id.*

Finally, the Court is unpersuaded by plaintiff's argument that requiring exhaustion is inappropriate because the bond breach notice violates the Due Process Clause of the United States Constitution. The Court concludes that because plaintiff did not exhaust her administrative remedies, the Court should decline to assume jurisdiction to review her claims. Accordingly, the complaint is dismissed. Plaintiff may wish to return to the agency to file a motion to reopen the proceeding pursuant to 8 C.F.R. § 103.5.

## Conclusion

For the foregoing reasons, defendants' motion for summary judgment dismissing plaintiff's complaint is granted.

SO ORDERED.