# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 31, 2011

No. 10-20515

Lyle W. Cayce
Clerk

AAA BONDING AGENCY INC., a Texas corporation, who is an appointed agent of Safety National, a Missouri corporation; SAFETY NATIONAL CASUALTY CORPORATION, a Missouri Corporation

Plaintiffs - Appellants

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY; ERIC H. HOLDER, JR., in his official capacity as United States Attorney General; JANET NAPOLITANO, in her official capacity as Secretary of the Department of Homeland Security; PERRY RHEW, in his official capacity as the Director of the Administrative Appeals Office of the Department of Homeland Security,

Defendants - Appellees

Consolidated with
No. 10-20695

SAFETY NATIONAL CASUALTY CORPORATION, a Missouri Corporation; AAA BONDING AGENCY, INC., a Texas Corporation, who is an appointed agent of Safety National, a Missouri Corporation,

Plaintiffs - Appellees Cross Appellants

v.

Nos. 10-20515 & 10-20695

UNITED STATES DEPARTMENT OF HOMELAND SECURITY; ERIC H. HOLDER, JR., in his official capacity as United States Attorney General; JANET NAPOLITANO, in her official capacity as Secretary of the Department of Homeland Security; PERRY RHEW, in his official capacity as the Director of the Administrative Appeals Office of the Department of Homeland Security,

Defendants - Appellants Cross Appellees

---

Appeals from the United States District Court
for the Southern District of Texas

---

Before JOLLY, DeMOSS, and PRADO, Circuit Judges.

PER CURIAM:[*]

This case stems from the Department of Homeland Security's (DHS) breach of more than 1,400 immigration bonds posted by Safety National Casualty Corporation (Safety National) and AAA Bonding Agency (AAA, collectively "Plaintiffs"). The parties filed cross-motions for summary judgment. The district court's determination on fifteen bonds gave rise to the present appeals and cross-appeal.

**I.**

Safety National, a surety company, and AAA, Safety National's bonding agent, posted bonds on behalf of the aliens. The immigration bonds at issue procure an alien's release from DHS custody pending the outcome of deportation proceedings. Pursuant to the terms of the bond agreement, DHS may issue a

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

notice to the obligors, demanding delivery of the bonded alien (demand notice). DHS may also send a notice of appearance directly to the alien. The notice sent to the alien is frequently referred to as a "run letter" because once the alien knows of his or her removal date the flight risk increases and the alien frequently fails to surrender. If sent, a run letter may not be mailed to the alien until three days after the demand notice was sent to the obligors. Pursuant to the terms of the bond agreement, the bond is breached when "in response to a timely demand the obligor . . . fails to produce the alien at the location specified in that demand." DHS must send notice of the breach determination to the obligors. The obligors may challenge the breach determination by filing an administrative appeal, motion for reconsideration, motion to reopen with DHS, or by filing suit with the United States District Court. A final breach determination creates a claim in favor of the United States.

In the present matter, Safety National and AAA, co-obligors on the immigration bonds at issue, filed suit against DHS pursuant to the Administrative Procedures Act (APA), seeking declaratory and injunctive relief on over 1,400 immigration bonds that had been deemed breached by DHS. Plaintiffs asserted that the bonds were either improperly breached pursuant to the bond agreement or that there were valid defenses to the breach determinations. DHS counterclaimed, seeking over $9 million in interest, penalties, and handling charges due on the 1,400 bonds. The parties selected fifty representative bonds and agreed to enter into Alternative Dispute Resolution (ADR) to assess the validity of DHS's breach determinations and Plaintiffs' asserted defenses. Following ADR, forty-one breach determinations remained unresolved for the district court's consideration. The parties filed

cross-motions for summary judgment on the remaining bonds. The district court addressed the motions in three separate rulings, giving rise to the present appeals and cross-appeal.

## II.

## A.

The parties raise several issues on appeal. Plaintiffs argue that (1) DHS cannot send a demand notice more than 90 days after the entry of a final removal order; (2) demand notices must be sent by certified mail; (3) DHS must send a demand notice to both obligors when the bond agreement so specifies in order to trigger either Plaintiffs' performance under the bond agreement; and (4) DHS's breach determination must be made by an authorized DHS employee with supervisory authority. DHS argues that (1) the district court erred in finding that a prematurely sent run letter should not render a bond forever "unbreachable;" (2) a bond is not breached when DHS presents evidence that the run letter was not received by the alien; and (3) Plaintiffs forfeited the "notice to both" defense with respect to two bonds. We consider each in turn.

## B.

This court reviews de novo the district court's ruling on summary judgment "applying the same standard as the district court." *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 228 (5th Cir. 2010). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

However, this court must apply the same "highly deferential" standard of review of an agency decision that was applied by the district court. *See Pension Benefit Guar. Corp. v. Wilson N. Jones Mem'l Hosp.*, 374 F.3d 362, 366 (5th Cir.

2004) (citation omitted). When reviewing under the APA, the district court, and this court, may set aside an agency's ruling "only if it is arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence on the record taken as a whole." *Sun Towers, Inc. v. Schweiker*, 694 F.2d 1036, 1038 (5th Cir. 1983); *see also* 5 U.S.C. § 706. An agency's action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Tex. Oil & Gas Ass'n v. U. S. Envtl. Prot. Agency*, 161 F.3d 923, 933 (5th Cir. 1998) (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). "[T]he reviewing court [decides] all relevant questions of law." 5 U.S.C. § 706.  Our review under this standard is narrow, and we are not to substitute our judgment for that of the agency. *See Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43.

## III.

## A.

Plaintiffs argue that DHS is required to send a demand notice within 90 days of a final removal order. Pursuant to the bond agreement, a bond is cancelled as required by, *inter alia*, "circumstances as provided by statute or regulation." The statute at issue states that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). Plaintiffs assert that § 1231's mandatory removal date creates an implied term in the bond agreement, requiring DHS to send a demand notice before the expiration of 90 days. The

district court held that DHS was not required to issue a demand notice within 90 days of a final removal order because the statute setting forth the 90 day removal period was relevant only to the government's detention authority.

The bond agreement states that no notice of a breach "shall be sent to the obligor more than 180 days following the date of the breach." Failure to send a timely breach notice does not affect the status of the bond. The bond "remains in force until and unless properly cancelled." The paragraph then concludes: "[i]n the case of a delivery bond, [DHS] may, unless otherwise precluded by law, send a new timely demand to produce an alien and then breach the bond again if the obligor fails to produce the alien." The bond agreement does not set forth a time requirement for issuance of a demand notice.

Under its terms, the bond agreement is cancelled upon the termination of deportation/removal proceedings. The relevant regulations define "termination" as the point in time when the alien leaves the United States. *See* 8 C.F.R. § 245.1(c)(8)(ii). Plaintiffs assert that they cannot be obligated to produce an alien for an indefinite period of time. However, DHS does not have the authority to detain an alien indefinitely. *See, e.g.*, *Clark v. Martinez*, 543 U.S. 371, 385-86 (2005) (holding that § 1231 does not authorize indefinite detention); *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). The terms of the agreement do not set forth a 90-day deadline and § 1231 is a general provision that does not address the time in which a demand notice must be sent on an immigration bond. We agree with the district court that § 1231 was not an implied term of the bond agreement and DHS was not required to send a demand notice within 90 days of a removal order.

**B.**

Plaintiffs next assert that the notice of a breach determination must be sent via certified mail, and thus breach determinations sent by regular mail were not properly issued. The relevant statute requires that "[i]n any proceeding initiated by the [agency], with proposed adverse effect, service of the initiation notice and of notice of any decision by a[n agency] officer shall be accomplished by personal service." 8 C.F.R. § 103.5a(c)(1). Personal service is defined as either personal delivery or delivery by certified mail. *Id.* § 103.5a(a). Service by regular mail is permitted for "other types of papers" involved in a proceeding. *Id.* § 103.5a(d).

Plaintiffs argue that a breach determination has a proposed adverse effect because it may be appealed with DHS or to the district court and thus initiates a proceeding. DHS counters that it is owed deference in its reasonable interpretation of its own regulations, and that it does not treat a breach determination as "proceeding." DHS also asserts that its own policy statements make clear that agency policy was to mail notice of a breach determination by regular mail. The district court determined that DHS's interpretation was afforded deference under the APA and held that breach determinations sent by regular mail gave Plaintiffs proper and timely notice. We agree that DHS's interpretation that a breach determination is excluded from the term "proceeding" is entitled to deference. *See Auer v. Robbins*, 519 U.S. 452, 461 (1997) (finding that an agency's reasonable interpretation of its own regulations is entitled to deference). Breach determinations sent by regular mail are enforceable.

## IV.

## A.

DHS also challenges the district court's rulings on the requirement that separate notice must be sent to both Safety National and AAA ("notice to both" defense). The bond agreement reads: "Address to use for notice purposes: [ ] Obligor [ ] Agent [ ] Both." Plaintiffs selected "[ ] Both." The district court found that notice to both was a condition precedent to both Safety National's and AAA's performance, even though notice had been sent to one obligor. DHS argues that notice to both obligors is not a condition precedent to either Plaintiffs' performance.

A condition precedent is an act or event that must take place before performance of a contractual obligation is due. *Tex. Dep't of Housing and Cmty. Affairs v. Verex Assurance, Inc.*, 68 F.3d 922, 928 (5th Cir. 1995) (overruled on other grounds). Generally, a condition precedent is disfavored. *See*, *e.g.*, *Matter of Timely Secretarial Serv., Inc.*, 987 F.2d 1167, 1174 n.7 (5th Cir. 1993) (agreeing that "conditions precedent to most contractual obligations[ ] are not favored and must be expressed in plain, unambiguous language"); RESTATEMENT (SECOND) OF CONTRACTS § 227(1) (1981).

The language of the bond agreement does not clearly specify that notice to both obligors was a condition precedent to either obligor's performance. *See Cedyco Corp. v. PetroQuest Energy, LLC*, 497 F.3d 485, 488 (5th Cir. 2007) (noting that "the inclusion of words such as 'if,' 'provided,' 'on condition that,' or some similar phrase of conditional language indicate that the parties intended there to be a condition precedent" (internal marks and citation omitted)). DHS must certainly provide timely notice to an obligor in order to trigger the obligor's

performance. However, the bond agreement does not indicate that the form of notice given, i.e., notice to both obligors, was a condition precedent to either obligor's performance. The bond agreement provision that gives the obligors an option to request that notice be sent to both need not be construed as a condition precedent in order to give it meaning. When notice was provided to only one obligor, that notice triggered that obligor's duty to act. However, as to the obligor that did not receive notice, that obligor's duty to act has not been triggered. DHS can only enforce a bond against an obligor that received notice. To the extent that one obligor received a demand notice on the disputed bonds, that obligor was required to perform and, subject to any other deficiencies, the bond breach determination is enforceable.[1]

## B.

DHS also argues that the district court erred in finding that when the contract so specifies, notice must be sent to both obligors, even when the address provided is the same. DHS argues that the plain language of the bond agreement does not impose such a requirement, and that notice requirements are satisfied by mailing notice to only one obligor when the address provided is the same. The district court rejected this argument, finding that although two separate notices need not be mailed, notice identifying both obligors as recipients was required to satisfy the terms of the agreement. This finding is consistent with the terms

---

[1] DHS also argues that the district court erred in finding that Plaintiffs did not need to show prejudice from a lack of notice to both obligors. Plaintiffs need not show prejudice from a lack of notice because failure to provide notice results in obvious prejudice.

of the bond agreement and the requirement that each obligor receive adequate notice. As such, we find no error with the district court's holding on this issue.[2]

## V.

The bond agreement states that "no demand to produce the bonded alien for deportation/removal shall be sent less than three days prior to sending notice to the bonded alien" (i.e., run letter). The district court held that a demand notice was untimely when DHS sent a run letter to an alien before three days had passed after the demand notice to the obligors. DHS does not dispute this holding. DHS concedes that if it sends notice to the bonded alien prior to the expiration of three days, notice to the obligor is untimely and DHS cannot breach a bond if the obligor fails to produce the alien. The district court further found that, in such circumstances, the bond remains "forever unbreachable." Both parties raise challenges to the district court's rulings on the run letters.

## A.

DHS challenges the district court's finding that once a run letter has been sent prematurely, this defect cannot be cured by reissuing a demand notice at a later date. DHS argues that the district court's holding is contrary to the purpose of the bond because DHS would have no leverage to compel obligors to produce an alien. DHS further asserts that the district court's holding is inconsistent with the bond agreement that permits DHS to reissue a breach notice. DHS urges this court to find that it may cure the defect of sending a

---

[2] As previously discussed, notice to both obligors is not a condition precedent to the performance by either obligor. Thus, if both obligors have the same address and DHS sends notice to that address but identifies only one of the obligors as the recipient, only that obligor's duty is triggered. To trigger both obligors' duties, DHS must identify both obligors as recipients in the notice sent to their joint address, even if sent in only one notifying document.

premature run letter at some unspecified "later date," arguing that an alien is already aware of his pending removal before the run letter specifying the date of removal is sent and further that the flight risk "diminishes significantly" after the removal date has passed.

Although DHS contends that the district court's finding removes the "only mechanism" it has to compel obligors to produce an alien, this is the consequence of DHS's own violation of the terms of the bond agreement—a violation which would not have occurred but for DHS's premature mailing of the run letters. Plaintiffs accept the risk that an alien may flee at any time up until his removal date, including the time between the removal order and the date the demand notice is sent. By sending the run letters early, DHS exacerbates the flight risk prior to Plaintiffs having an opportunity to produce the alien. If this were not a significant risk, presumably it would not be required by agreement that DHS send obligors demand notices three days before sending notice to the alien. Moreover, this flight risk does not "diminish" after a run letter has sent, for the alien may have already fled. An untimely run letter is a clear violation of the terms of the bond agreement, the consequences of which cannot be "undone" by the passage of time. We affirm the district court's finding that, in cases where a run letter was sent to an alien prior to the expiration of three days after a demand notice was sent to the obligors, DHS cannot cure the defect by re-sending a demand notice to the obligors at some later date. In these circumstances, the bond is and remains unbreachable.

**B.**

DHS further argues that when the evidence establishes that an alien did not receive a prematurely sent run letter it should be permitted to reissue a

demand notice because the flight risk associated with sending a premature run letter is not present when the alien did not receive the run letter.

The district court held that timely notice depends on when the demand notice and run letter were sent, not received. The district court further held that the factual inquiry involved in establishing whether a run letter was not actually delivered or was refused by the alien after the alien learned of its contents would be too onerous to be practical, and that a postal marking is not sufficient evidence to establish that the alien had no knowledge of the letter. We find no reversible error with the district court's finding that once a premature run letter has been sent, the defect cannot be cured.

## C.

Plaintiffs challenge the district court's finding that in nine bonded aliens' files there was no evidence that a run letter had been sent and therefore the initial demand notice was timely. Plaintiffs assert that there is a genuine issue of material fact that run letters were sent to these nine aliens because DHS's routine custom and practice was to send a run letter. Plaintiffs contend that the absence of a run letter in the aliens' files does not support a finding that a run letter was not sent when it is the agency's general practice to do so.

It is undisputed that DHS's files for the nine bonds at issue do not contain run letters. The district court made no finding as to any bad faith or negligence on the part of DHS. The evidence offered by DHS states that the agency is not required to send a run letter to an alien after sending a demand notice to the obligor. Plaintiffs' allegation that the run letters were sent despite having been missing from the aliens' files is mere speculation. Moreover, the district court invited Plaintiffs to present evidence that the aliens were actually sent run

letters and, if so, it would revise its ruling. That evidence was not forthcoming. The district court did not err in finding that there was no genuine issue of material fact that there was no evidence of run letters in the files of the nine aliens and properly granted summary judgment in favor of DHS as to those bonds.

## VI.

In their cross-appeal, Plaintiffs argue that the district court erred in finding that the "notice to both" defense had been forfeited with respect to two bonds. In a motion to reconsider the breach determinations filed with DHS's Field Office Director, Plaintiffs argued that DHS "did not give the requisite notice to the obligors . . . . Contrary to the settlement, DHS did not give the obligor[s] . . . notice to surrender with the questionnaire attached. Therefore [obligors] are entitled to rescission of the declaration of breach in this case." The district court held that this was insufficient to raise a "notice to both" defense and that Plaintiffs had forfeited that issue on appeal to the district court.

Generally, when an agency's regulations require issue exhaustion in administrative appeals, an issue not presented to the administrative body cannot be asserted for the first time in federal court. *See Sims v. Apfel*, 530 U.S. 103, 108 (2000). However, federal courts do not have the authority to require a plaintiff to exhaust administrative remedies before seeking judicial review under the APA, where neither the relevant statute nor agency rules specifically mandate exhaustion as a prerequisite to judicial review. *Darby v. Cisneros*, 509 U.S. 137, 154 (1993) ("[W]here the APA applies, an appeal to 'superior agency authority' is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and the

administrative action is made inoperative pending that review.") (emphasis in original). The APA "has limited the availability of the doctrine of exhaustion of administrative remedies to that which the statute or rule clearly mandates." *Id.* at 146. "Courts are not free to impose an exhaustion requirement as a rule of judicial administration where the agency action has already become 'final' under § 10(c)," 5 U.S.C. § 704. *Id.* at 154. Thus, in actions brought under the APA, the district court may not impose an exhaustion requirement where exhaustion is not expressly required by statute or agency rule.

Plaintiffs filed claims with the district court pursuant to the APA, 5 U.S.C. § 701 *et seq.* An administrative appeal is not a prerequisite to judicial review of agency action "unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative." 5 U.S.C. § 704. Administrative review of a breach determination is optional but not required by the governing regulations. *See* 8 C.F.R. § 103.6(e); *McLean v. Slattery,* 839 F. Supp. 188, 190 (E.D.N.Y. 1993) (finding that exhaustion of administrative remedies is not mandated for appeal of determinations that a bond has been breached); *see also Dresser v. Meba Med. & Benefits Plan*, 628 F.3d 705, 711 (5th Cir. 2010) (noting that the relevant inquiry is whether the statutes and regulations provide an adequate remedy in court for review of a final agency action). The relevant statutes and regulations do not specifically require the exhaustion of administrative remedies, thus Section 10(c) applies. *See United States v. Menendez*, 48 F.3d 1401, 1410 (5th Cir. 1995).

Because the Plaintiffs may appeal a breach determination directly to a federal court, 8 C.F.R. § 103.6(e), they may raise the notice-to-both defense with respect to the two bonds at issue on cross-appeal, just as they have raised the

defense with the other bonds under which the optional administrative appeals were not taken. The district court erred in rejecting Plaintiffs' arguments as forfeited.

## VII.

For the foregoing reasons, we affirm the district court's summary judgment rulings in part and reverse in part. This matter is remanded to the district court for further proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.