# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 12, 2015

Lyle W. Cayce
Clerk

No. 14-20057

AAA BONDING AGENCY, INCORPORATED, a Texas corporation, who is an appointed agent of Safety National, a Missouri corporation,

       Plaintiff - Appellant

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY; ERIC H. HOLDER, JR., in his official capacity as United States Attorney General; JEH JOHNSON, in his official capacity as Secretary of the Department of Homeland Security; RON ROSENBERG, in his official capacity as the Director of the Administrative Appeals Office of the Department of Homeland Security,

       Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:05-CV-2159

Before DAVIS, WIENER, and HAYNES, Circuit Judges.

PER CURIAM:*

This dispute over twenty-three immigration bonds stems from ongoing litigation between the Department of Homeland Security ("DHS") and AAA

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-20057

Bonding Agency, Inc. ("AAA") about more than 1,400 bonds DHS deemed breached by AAA and its co-obligor, Safety National Casualty Corporation ("Safety National"). In *AAA Bonding Agency Inc. v. United States Department of Homeland Security* ("*AAA Bonding I*"), we held that DHS may only enforce an immigration bond against a surety company or bonding agent that has received notice demanding delivery of the alien covered by the bond. 447 F. App'x 603, 609–10 (5th Cir. 2011) (unpublished). In light of that decision, DHS and Safety National signed a Settlement Agreement releasing AAA from liability to the extent it is jointly and severally liable with Safety National. The district court held that *AAA Bonding I* severed the joint and several relationship between AAA and Safety National. We disagree. Accordingly, we REVERSE the district court's grant of summary judgment and REMAND for further proceedings.

## I. Factual Background

Immigration bonds procure an alien's release from DHS during the pendency of deportation proceedings. Safety National, a surety company, and AAA, a bonding agent, are co-obligors that post bonds on behalf of aliens to secure their temporary release. The co-obligors' contractual obligations are governed by the Form I-352 bond agreement ("bond agreement"), which requires them to deliver an alien to DHS upon receipt of a Form I-340 demand notice ("demand notice") from DHS. A bond is breached when "in response to a timely demand the obligor . . . fails to produce the alien at the location specified in that demand." In such an instance, DHS sends a breach determination to the obligors, which the obligors may challenge by filing an administrative appeal or filing suit in the district court, among other options.

In the present case, Safety National and AAA were co-obligors on over 1,400 immigration bonds deemed breached by DHS. AAA and Safety National sued DHS, challenging the agency's bond breach determinations. In *AAA*

2

No. 14-20057

*Bonding I*, we held that DHS may only enforce a bond against an obligor that has received a demand notice requesting delivery of an alien. 447 F. App'x at 609–10. "When notice was provided to only one obligor, that notice triggered that obligor's duty to act. However, as to the obligor that did not receive notice, that obligor's duty to act has not been triggered." *Id.* at 609.

After *AAA Bonding I*, Safety National and DHS negotiated a world-wide settlement of their dispute ("the Settlement"). Although the Settlement expressly reserved the United States's rights against AAA, it also stated "if any federal district court holds that, but for this Agreement, AAA Bonding or any other agent company would be jointly and severally liable with Safety National for any of the [bonds] . . . then any claim that the United States may have with respect to these [bonds] will be released as to AAA Bonding . . . to the extent that the United States' claim against Safety is released."

In light of the court's decision in *AAA Bonding I* and the Settlement, DHS and AAA filed cross-motions for summary judgment with respect to 24 bonds where AAA alone received notice. While DHS argued that AAA was only liable severally for each of these bonds, AAA maintained that the bond agreement, which established joint and several liability, was controlling, and that the Settlement between Safety National and DHS released AAA from further liability. The district court granted summary judgment for DHS with respect to 23 bonds, finding AAA only liable severally on each.[1] AAA timely appealed.

## II. Discussion

"We review the district court's grant of summary judgment *de novo*, applying the same standard as the district court." *Chaney v. Dreyfus Serv.*

---

[1] The district court denied DHS summary judgment with respect to one bond and remanded the bond to DHS for further consideration. As such, that bond is not considered on appeal.

*Corp.,* 595 F.3d 219, 228 (5th Cir. 2010). Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED R. CIV. P. 56(a). AAA and Safety National filed their initial claim pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.*, challenging DHS's bond breach determination. *See* 8 U.S.C. § 1226; 8 C.F.R. § 103.6. When considering agency action, we evaluate whether the agency's conduct was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

The rights and obligations of the United States with respect to contracts entered into pursuant to federal statutes are traditionally governed by federal law, and the bond agreement states that "[f]ederal law shall apply to the interpretation of the contract." *See United States v. Seckinger*, 397 U.S. 203, 209–10 (1970). "Applying federal law in the contract context includes looking to principles of general contract law that can be found in treatises or restatements of the law." *Univ. of Tex. Sys. v. United States*, 759 F.3d 437, 443 (5th Cir. 2014) (citation and internal quotation marks omitted).

We interpret contracts in "light of all the circumstances, and if the principal purpose of the parties is ascertainable it is given great weight." *See* RESTATEMENT (SECOND) OF CONTRACTS § 202(1) (1981). The plain language of the bond agreement commands that AAA "shall be jointly and severally liable with the surety[, Safety National,] for any breach of this bond agreement." It notes that "the liability of a co-obligor is in addition to, not instead of, that of the principal obligor" and emphasizes that "[a]ny obligation or duty imposed on an obligor by this contract applies equally to all co-obligors."

This contractual language manifesting an intent to enter into a joint relationship is controlling unless, inter alia, there are express words of severance or the terms, in context, articulate an intent to be bound severally. *Dallas Gas Partners, L.P. v. Prospect Energy Corp.*, 733 F.3d 148, 160 (5th Cir.

2013) (quoting 12 WILLISTON ON CONTRACTS § 36:4 (4th ed. 1990)).  DHS concedes that the bond agreement contemplates joint liability for AAA and Safety National, and DHS has not pointed us to any contractual language severing this relationship.  *See* RESTATEMENT (SECOND) OF CONTRACTS § 201(1) ("Where the parties have attached the same meaning to a promise or agreement or a term thereof, it is interpreted in accordance with that meaning.").  Furthermore, the bond agreement tasks both AAA and Safety National with performing on the contract; it does not delineate responsibility between the parties.  *See* 9 JOHN E. MURRAY, CORBIN ON CONTRACTS § 52.3 (Joseph M. Perillo, ed. 2007) (explaining that the distinction between a joint and several obligation, and a several obligation, is whether the obligors "promise[d] one and the same performance or . . . two different performances").

Although the bond agreement imposes joint and several liability, the Agency argues *AAA Bonding I* severed this joint relationship, rendering AAA solely liable for bonds where it alone received notice.  We disagree with this reading of the case.  In *AAA Bonding I*, AAA and Safety National argued that neither party had to perform if *both* co-obligors did not receive notice from DHS.  447 F. App'x at 609.  The court rejected this argument, reasoning that notice to both parties was not a condition precedent to performance because the bond agreement did not clearly specify notice to both was required.  *Id.* Instead, *AAA Bonding I* held only that DHS is unable to enforce a bond against an obligor that has not received a demand notice for delivery of an alien.  447 F. App'x at 609–10.

Thus, while its holding affected DHS's ability to *enforce* the bond agreement, *AAA Bonding I* did not change the terms of the agreement itself, which mandates joint and several liability.  This conclusion is supported by *AAA Bonding I's* language, which does not refer to "express words of severance" in the bond agreement but instead focuses on the contract's enforceability

against an obligor that has or has not received notice. *Dallas Gas Partners, L.P.*, 733 F.3d at 160; *see AAA Bonding I*, 447 F. App'x at 609. This principle is manifest in other contexts. For instance, where the statute of limitations has run on a cause of action or a plaintiff is unable to obtain jurisdiction over a party, the defendant's contractual obligation is unchanged, but the plaintiff's ability to enforce that obligation is curtailed. *See* RESTATEMENT (SECOND) OF CONTRACTS § 8 (1981) ("An unenforceable contract is one for the breach of which neither the remedy of damages nor the remedy of specific performance is available, but which is recognized in some other way as creating a duty of performance . . . ."). Thus, DHS's inability to enforce a bond breach against a party that did not receive notice does not alter the joint and several relationship between AAA and Safety National.

Furthermore, DHS's construction would undermine the intent of the statutory scheme. The bond agreement and its accompanying regulations dictate that "[o]nly an acceptable surety company . . . [can] be the principal obligor on a surety bond." *See* 8 C.F.R. § 103.6(b) (defining what constitutes an "acceptable surety"). While AAA does not qualify as an "acceptable surety," DHS's interpretation of *AAA Bonding I* would allow it to unilaterally transform a bonding agent, such as AAA, into a principal and sole obligor by sending it notice without sending notice to Safety National. This would undermine the bond agreement's provision that limits the principal obligors to "acceptable surety" companies. *See* RESTATEMENT (SECOND) OF CONTRACTS § 202(5) (1981) ("Wherever reasonable, the manifestations of intention of the parties to a promise or agreement are interpreted as consistent with each other . . . .").

The Settlement between Safety National and DHS releases AAA to the extent it is joint and severally liable with Safety National. Because we

## No. 14-20057

conclude that AAA is jointly and severally liable on the 23 disputed bonds at issue here, AAA is released from liability on those bonds.[2]

Accordingly, we REVERSE the decision of the district court and REMAND for further proceedings consistent with this decision.

---

[2] Because this issue is dispositive, we do not address the other issues raised on appeal.