# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 7, 2013

No. 12-20496

Lyle W. Cayce
Clerk

DALLAS GAS PARTNERS, L.P.,

Plaintiff - Counter Defendant - Appellant

v.

PROSPECT ENERGY CORPORATION,

Defendant - Counter Claimant - Appellee

v.

DALLAS GAS GP, L.L.C.; THOMAS P. MUSE; DAVID W. NELSON,

Third Party Defendants - Appellants

Appeals from the United States District Court
for the Southern District of Texas

Before DENNIS, CLEMENT, and SOUTHWICK, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

In this breach of contract case, appellants Dallas Gas Partners, L.P., Dallas Gas GP, L.L.C., Thomas Muse, and David W. Nelson contend that a contract's release and covenant not to sue did not bind individual limited partners or authorize recovery of attorneys' fees in the case of breach. The district court granted summary judgment in favor of appellee Prospect Energy

Corp., included attorneys' fees in its award, and held that appellants were jointly liable.  We affirm.

## FACTS AND PROCEEDINGS

A.    Background

Tom Muse, David Nelson, and Jeffrey Weiss, along with two other partners, formed Dallas Gas Partners, LP ("DGP") pursuant to Texas law on July 20, 2004, under the name MNW Acquisition, LLP.[1]  The five individuals were DGP's limited partners; its general partner was another partnership, MNW Partners, LLC ("MNW Partners"), which consisted of Muse, Nelson, and Weiss.

On July 29, DGP signed a purchase and sale agreement to buy Gas Solutions, Ltd. ("Gas Solutions"), a gas processing plant.  As part of the agreement, DGP agreed to pay a non-refundable $500,000 deposit by September 3 and pay the balance by September 23.  DGP attempted to finance the purchase by securing a loan from Prospect Energy Corp. ("Prospect").  DGP and Prospect signed a non-binding letter agreement on September 3, in which Prospect agreed to lend DGP almost 95% of the purchase price, subject to due diligence.  The agreement included an exclusivity provision that prevented DGP from negotiating with other lenders during the agreement period.  After conducting due diligence, Prospect informed DGP on September 21 that its diligence raised serious concerns and that it decided not to loan DGP the money.  After DGP threatened to sue, the two entities traded proposals and counter-proposals for resolving the dispute.  Prospect eventually accepted DGP's proposition that Prospect pay DGP $3.295 million as reimbursement for DGP's expenses and in exchange for DGP assigning Prospect its right to buy Gas Solutions.

[1] MNW Acquisition, LLP also went by the name Gas Solutions Partnership II, LLP for a short time.  The magistrate judge and district court referred to these entities as DGP, as does this decision.

2

To implement this proposal, DGP assigned the contract to purchase Gas Solutions to DGP's general partner, MNW Partners, which Muse, Nelson and Weiss alone owned and managed.[2]  Muse, Nelson, and Weiss then sold their individual membership interests in MNW Partners to Prospect, thus transferring the contract to Prospect.

B.     Relevant documents

The parties memorialized this transaction in three documents on September 23.  The first document–the "Unanimous Written Consent of the Partners of [DGP]"–was signed by the five DGP limited partners[3] and approved the assignment of the contract to purchase Gas Solutions to MNW Partners.[4]

The second document, the "LLC Membership Interest Purchase Agreement," was signed by Muse, Nelson, Weiss, and Prospect CEO John F. Barry.  It was

> entered into by and among Thomas P. Muse, a resident of the State of Texas ("Muse"), David W. Nelson, a resident of the State of California ("Nelson"), and Jeffrey Weiss, a resident of the State of Texas ("Weiss") (individually a "Seller" and collectively, the "Sellers") and PEC White Oak LLC, a Delaware limited liability company ("Purchaser").[5]

In addition to recording the transfer of the individual membership interests in MNW Partners to Prospect in return for $3.295 million, the agreement included a "Mutual Release" by which "[e]ach of the signatories . . . including, without limitation, any parties acknowledging or consenting to this Agreement," among other things, released all claims and rights arising out of and "covenant[ed] not

---

[2]  Nelson also replaced MNW Partners as general partner of DGP.

[3]  Nelson signed this document twice, once as a DGP limited partner and once as manager of the outgoing general partner, MNW Partners.

[4]  It also replaced the MNW Partners with Nelson as general partner.

[5]  PEC White Oak LLC is wholly owned by Prospect.

to institute, maintain or prosecute any action, claim, suit, proceeding or cause of action" relating to the letter agreement. The release specified that "[i]n any litigation arising from or related to an alleged breach of [the Mutual Release], this Agreement may be pleaded as a defense, counterclaim or crossclaim." A separate section of the agreement limited the recovery from a "claim otherwise asserted in litigation under or pertaining to this Agreement" to "actual damages." The agreement also included a New York choice-of-law provision.

The final document was the "Consent and Agreement of Limited Partners of [DGP]." Signed by each of the five DGP limited partners, it provided that:

> [E]ach of the undersigned, being a limited partner of the Partnership, hereby acknowledges, consents to and approves of:
>
> (i) the assignment of the Partnership [of its right to purchase Gas Solutions]; [and]
>
> (ii) the transfer and assignment by each of Thomas P. Muse, David W. Nelson and Jeffrey Weiss of their respective member interest in MNW Partners, LLC, to PEC White Oak LLC . . . .
>
> In addition, each limited partner of the Partnership agrees to and ratifies the provisions set forth in Section 9 [the Mutual Release] of the foregoing LLC Membership Interest Purchase Agreement.

C.     Proceedings

Notwithstanding the Mutual Release, DGP sued Prospect two months later in the Southern District of Texas alleging fraud, breach of fiduciary duty, and tortious interference with its agreement to purchase Gas Solutions. Prospect counterclaimed alleging breach of the covenant not to sue. Prospect subsequently added claims against DGP's general partner (Dallas Gas GP, LLC ("Dallas Gas GP") and against Muse, Nelson, and Weiss.[6] After discovery,

---

[6] Muse, Nelson, and Weiss were Dallas Gas GP's managing members and sole owners.

Prospect moved for summary judgment, arguing that the Mutual Release barred DGP's claims.

The district court referred Prospect's motion for summary judgment to a magistrate judge. Although noting that the LLC Membership Interest Purchase Agreement was entered into by Muse, Nelson, and Weiss, the magistrate judge observed that "[i]t is undisputed that all of DPG's [sic] limited partners signed consents agreeing to the LLC agreement and that they were attached to the document." He found that "the evidence clearly shows that DGP's partners signed these pages [of the consent] in their capacities as limited partners and not in their 'individual' capacities." The magistrate also found that "DGP was the intended beneficiary of the sale and was the real party in interest," discrediting Nelson's affidavit testimony that "he received payment only in his capacity as a partner of MNW Partners." The magistrate concluded that DGP was bound by the release. He then noted that DGP did not argue that its claims were not within the scope of the release. Because the release bound DGP and its claims were within the release's scope, he recommended that the district court grant Prospect's motion for summary judgment on DGP's claims.

The district court adopted the magistrate's report and recommendation and granted Prospect's motion in February 2006. It also denied DGP's request for leave to amend its complaint to add the same claims against an affiliate and employees of Prospect because DGP did not allege any activity or propose to add any defendant not covered by the release. The district court subsequently denied DGP's motion to file an interlocutory appeal of the court's denial of its leave to amend. DGP nevertheless appealed and this court dismissed for lack of jurisdiction. Following this dismissal, DGP filed suit in the Eastern District of Texas, bringing the same claims that the district court in the Southern District had refused to allow it to add. This suit was transferred to the Southern District as a duplicative suit, consolidated with the ongoing litigation, and disposed of on

5

motion for summary judgment in January 2008 for the reasons set forth in the district court's and magistrate judge's earlier rulings.

Meanwhile, Prospect filed a Second Amended Counterclaim and Third-Party Complaint in June 2006 against DGP's current and former general partners (Dallas Gas GP and Nelson) as well as Muse, Nelson, and Weiss for, among other claims, breach of the covenant not to sue. Prospect also moved for summary judgment in July 2006 on its counterclaim against DGP for breach of the covenant.

Addressing Prospect's motion, the magistrate judge found that DGP "clearly violated the [r]elease" by filing its lawsuit. *Dallas Gas Partners, LP v. Prospect Energy Corp.*, No. G-04-669, 2007 WL 1466833, at *3 (S.D. Tex. May 16, 2007). The magistrate judge further noted that the LLC Membership Interest Purchase Agreement provided for "actual damages" that, for breach of a covenant not to sue, include the attorneys' fees incurred defending against the offending suit. *Id.* at *2. He also found that an award of attorneys' fees was proper because the "suit was an open and obvious breach of the Release brought by DGP in bad faith." *Id.* at *3. Based on his findings, he recommended that the district court grant Prospect's motion. *Id.* The district court adopted the magistrate's report and recommendation and granted Prospect summary judgment on its counterclaim against DGP in May 2007. *Id.* at *1.

The district court entered final judgment on all of DGP's claims (the February 2006 and January 2008 summary judgment orders) in August 2008, ruling that Prospect, its affiliate, and its employees prevailed on all claims and DGP should bear all costs. It stayed Prospect's remaining counterclaim and third-party claims pending resolution of DGP's appeal of the judgment. A panel of this court affirmed the district court's judgment per curiam, "essentially for the reasons given by the district court and the magistrate judge." *Dallas Gas*

*Partners, L.P. v. Prospect Energy Corp.*, 340 F. App'x 175 (5th Cir. 2009) (unpublished).[7]

Prospect filed a motion to lift the stay and realign the parties, and moved for summary judgment on its claims against Dallas Gas GP, Muse, Nelson, and Weiss. The court lifted the stay and realigned the parties,[8] and the individual defendants–Muse, Nelson, and Weiss–moved for summary judgment.

The district court granted Prospect's motion and denied the individual defendants' motion in January 2011. *Prospect Energy Corp. v. Dallas Gas Partners, LP*, 761 F. Supp. 2d 579, 604 (S.D. Tex. 2011). It found that:

> With documentary evidence, Prospect has shown, and the individual Defendants have conceded, that they signed LLC Purchase Agreement in their individual capacities and therefore are directly and personally liable as signatories to the LLC agreement, bound by the provisions promising not to "institute, maintain or prosecute" any claims against Prospect arising from the transaction.

*Id.* at 602. It also found that Muse, Nelson, and Weiss received "significant consideration" in exchange for DGP's contract to purchase Gas Solutions and agreeing to the release and covenant not to sue. *Id.* Finally, the district court found that "Prospect has produced uncontroverted evidence showing that Muse, Nelson, and Weiss caused and funded the filing of both lawsuits." *Id.* at 603. Based on these findings, the district court concluded that "their breach of the provision is 'obvious' as a matter of law and they are entitled to actual damages, including attorney's fees and litigation expenses," and that the LLC Membership Interest Purchase Agreement authorized recovery of the same damages. *Id.*

---

[7] The district court did not include in its final judgment its May 2007 summary judgment ruling on Prospect's counterclaim against DGP, and so the panel opinion did not address it.

[8] The remainder of this decision refers to DGP, Dallas Gas GP, Muse, Nelson, and Weiss in their realigned posture collectively as "defendants."

Subsequently, the district court ruled that the request for a jury trial on apportionment of damages between DGP, Dallas Gas GP, Muse, Nelson, and Weiss was untimely, and, in any event, absent words of severance in a contract, New York law imposes joint liability for damages when two or more people undertake an obligation jointly. *Prospect Energy Corp. v. Dallas Gas Partners, LP*, No. H-10-1396, 2011 WL 843908, at *1-2 (S.D. Tex. Mar. 8, 2011). The court found no words of severance in the LLC Membership Interest Purchase Agreement. *Id.* at *2.

The district court later determined the attorneys' fees and expenses portion of Prospect's damages award, a process that included "segregat[ing] fees incurred to defend against DGP's claims against Prospect from those incurred in Prospect's prosecution of counterclaims against DGP" and not including the latter in its assessment of attorneys' fees. *Prospect Energy Corp. v. Dallas Gas Partners, LP*, No. H-10-1396, 2011 WL 5864292, at *4 (S.D. Tex. Nov. 22, 2011). It awarded Prospect $1,189,019.41 in attorney's fees and $119,090.13 in expenses, *id.* at *7, and issued final judgment on the remaining claims in June 2012. Defendants appeal.[9]

## STANDARD OF REVIEW

We review the grant of summary judgment de novo, applying the same standards as the district court. *Albemarle Corp. v. United Steel Workers ex rel. AOWU Local 103*, 703 F.3d 821, 824 (5th Cir. 2013). Summary judgment is appropriate when the evidence indicates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *10 Ring Precision, Inc. v. Jones*, 722 F.3d 711, 717 (5th Cir. 2013); Fed. R. Civ. P. 56(a). "We view the evidence and draw reasonable inferences in the light most

---

[9] Weiss's appeal was dismissed for failure to pay the filing fee. Dallas Gas GP appeals the district court's damages award and imposition of joint liability.

8

favorable to the non-movant." *Maddox v. Townsend & Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011).

This court reviews issues of contract interpretation de novo. *Bayou Steel Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 642 F.3d 506, 509 (5th Cir. 2011). The district court's imposition of joint liability is also a matter of law, which the court reviews de novo. *Elementis Chromium L.P. v. Coastal States Petroleum Co.*, 450 F.3d 607, 612 (5th Cir. 2006). Finally, this court "review[s] *de novo* the district court's interpretation of state law and give[s] no deference to its determinations of state law issues." *Bradley v. Allstate Ins. Co.*, 620 F.3d 509, 516 (5th Cir. 2010).

## DISCUSSION

Nelson and Muse appeal the district court's holding that they were bound by the release and covenant not to sue, as well as its conclusion that they breached the release. All defendants appeal the district court's award of attorneys' fees to Prospect as actual damages and its imposition of joint liability.

### A. Individual defendants' liability

Nelson and Muse claim they are not individually liable for breach of the release and covenant not to sue for three reasons. First, they contend that they signed the LLC Membership Interest Purchase Agreement containing the Mutual Release as partners of DGP and not in their personal capacities. Second, they argue that, even if they did sign the LLC Membership Interest Purchase Agreement in their personal capacities, they are not bound because they, as individuals, received no consideration in return for their promise not to sue. Third, assuming they were personally bound, they argue that there was no breach because they never sued Prospect–DGP did.

1.  Signatures

9

Nelson and Muse (as well as DGP and Dallas Gas GP in their brief) argue that the district court was estopped from finding the partners to have signed the LLC Membership Interest Purchase Agreement in their individual capacities. They argue that the district court had previously concluded–and this court affirmed–that Prospect could enforce the covenant not to sue against DGP because the partners signed the agreement as DGP partners and not as individuals. According to the individual defendants, the district court could not later conclude that they signed the agreement in their individual capacities. Because they did not sign the agreement as individuals, Nelson and Muse argue that they, "individually, did not breach any agreement with Prospect," and Prospect would have to show that Nelson and Muse forfeited their limited liability in order to hold them liable for DGP's breach.

The record does not support defendants' contentions. The magistrate judge's report, adopted by the district court in February 2006, found that Nelson and Muse signed the Consent and Agreement of Limited Partners, which expressly agreed to and ratified the Mutual Release and covenant not to sue in the LLC Membership Interest Purchase Agreement, in their capacity as partners of DGP (under its former name, Gas Solutions Partnership II, LLP). The report made no such finding with respect to the LLC Membership Interest Purchase Agreement itself. In that agreement, "Thomas P. Muse, a resident of the State of Texas ('Muse'), David W. Nelson, a resident of the State of California ('Nelson'), and Jeffrey Weiss, a resident of the State of Texas ('Weiss')" transferred their individual partnership interests in MNW Partners to PEC White Oak LLC. Not only does the language of the LLC Membership Interest Purchase Agreement make clear that it was between the three individuals and the Prospect entity, such a transfer could not have been on the part of DGP because DGP had no partnership interest in MNW Partners.

10

There is no estoppel because the district court's finding in January 2011–that the individual defendants were bound–does not contradict its previous determination that they also signed a separate document in their capacity as DGP partners.[10]

2.    Consideration

Nelson and Muse argue that, even if they signed in their individual capacities, there was no valid contract because they did not personally receive consideration for their signatures.  They contend that the magistrate's report, adopted by the district court, previously determined that "all consideration for the Purchase Agreement was paid to DGP; the limited partners did not receive any compensation for undertaking any individual obligations."  Nelson and Muse argue that because no valid contract existed between them as individuals and Prospect, they were not bound by the covenant not to sue.

Nelson and Muse raise the lack of consideration argument for the first time here on appeal.  Prospect argues that they have waived this argument by failing to raise it in response to Prospect's summary judgment motion.  "If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 339-40 (5th Cir. 2005) (internal marks and citation omitted).  Further, "[i]f a party wishes to preserve an argument for appeal, the party must press and not merely intimate the argument during the proceedings before the district court.  An argument must

---

[10] In their papers, defendants raise arguments of corporate separateness under Texas and New York law.  In particular, at oral argument DGP counsel urged the court not to allow Prospect to prevail against individual defendants without undergoing the established steps for piercing DGP's corporate veil.  Although state law shields limited partners from liability for the acts of the partnership, Prospect is not suing the individual defendants based on their actions as partners but on their actions as individuals.

be raised to such a degree that the district court has an opportunity to rule on it." *Id.* (internal marks and citations omitted).

We find that the individual defendants did not waive their consideration argument. Arguing against summary judgment before the district court, Nelson and Muse contended that the court had previously determined that DGP was the "real party in interest." This is sufficient to preserve the argument that the agreement did not bind them because, receiving no consideration, they had no interest in the agreement.

Although not waived, the argument is unpersuasive. Nelson and Muse misstate the magistrate's report adopted by the district court in its February 2006 order. The report did not find that all consideration went to DGP and none to the individual partners. It noted merely that Nelson's statement in an affidavit that he received payment *only* in his individual capacity conflicted with his previous deposition testimony. The magistrate also observed that portions of the $3.95 million went to each of DGP's limited partners, as well as to pay for DGP's banker's fees and $500,000 deposit. Such facts, while supporting a conclusion that DGP received consideration under the contract, did not preclude the district court from later finding that the individual partners received consideration as well. We see no reason to overturn the district court's holding, as stated in its January 2011 summary judgment order, that "Muse, Nelson and Weiss ratified the LLC Purchase Agreement by retaining the significant consideration ($3.295 million) they were paid by Prospect."

3.    Breach

Finally, Nelson and Muse claim that, even if they are bound by the LLC Membership Interest Purchase Agreement, they did not breach it. According to Nelson and Muse, they "were not plaintiffs to the lawsuits" and only DGP, the named plaintiff, breached the covenant not to sue. They contend that only a party that filed and prosecuted a lawsuit on its own claims could breach the

agreement. They argue that the district court erred in finding that they violated the unambiguous terms of the release and covenant not to sue, in which they agreed not to "institute, maintain or prosecute any action, claim, suit, proceeding or cause of action of any kind to enforce any of" the released claims because they "caused and funded the filing of" DGP's lawsuits. *Prospect Energy*, 761 F. Supp. 2d at 602-03.

Individual defendants' interpretation of the agreement is flawed. The language of the agreement does not support an interpretation that the signatories covenanted not to sue only on their own claims. Rather, the text provides for a much broader release: the parties agreed not to institute, maintain, or prosecute "any" action to enforce "any" of the released claims.

Nelson's and Muse's construction of the release's text fails to give meaning to each of the agreement's terms. *See Two Guys from Harrison-N.Y., Inc. v. S.F.R. Realty Assocs.*, 472 N.E.2d 315 (N.Y. 1984) ("In construing a contract, one of a court's goals is to avoid an interpretation that would leave contractual clauses meaningless."). As Nelson's brief recognizes, the plain meaning of "institute" is "to originate or get established," and "prosecute" means to "to follow to the end: pursue until finished."[11] Nothing in those definitions suggests that only the named plaintiff can institute an "action, claim, suit, proceeding or cause of action." Even construing these terms as restricted by definition to a plaintiff's actions, the release also precludes a signatory from "maintain[ing]" a suit. Nelson's definition of "maintain"–"to sustain against opposition or danger: uphold and defend[;] . . . to continue or persevere in"–does not cover conduct that is different from the conduct covered by the term "prosecute." Thus, under Nelson's definitions, the term "maintain" is superfluous. However, one of Merriam-Webster's definitions of "maintain" that Nelson does not cite is "to

---

[11]   We use the non-movants' definitions from www.merriam-webster.com.

support or provide for." Using this definition, a signatory to the agreement could "maintain" a lawsuit if he provides financial support for the suit.

Nelson and Muse do not dispute that they personally funded DGP's lawsuits. Under an interpretation of the agreement that gives effect to all its terms, Nelson and Muse breached the agreement by funding DGP's lawsuits. The district court correctly determined that Nelson's and Muse's actions violated the release and covenant not to sue.[12]

B.  Attorneys' fees

Defendants contend that the district court's award of attorneys' fees to Prospect was error for two reasons.[13] First, they note that New York follows the American rule, which provides that each party pays its own fees and costs absent a specific statutory or contractual provision, *see Baker v. Health Mgmt. Sys., Inc.*, 772 N.E.2d 1099 (N.Y. 2002), and argue that no such provision is present here. Second, even if attorneys' fees spent defending against DGP's lawsuits are actual damages, defendants contend that New York law requires the court to determine that there was also "obvious breach or otherwise . . . bad faith." *Artvale, Inc. v. Rugby Fabrics Corp.*, 363 F.2d 1002, 1008 (2d Cir. 1966). According to the defendants, the district court erred by not finding bad faith before awarding Prospect attorneys' fees.

---

[12] Muse also contends that there is a genuine issue of material fact as to whether his actions were the but-for cause of Prospect's damages. Muse first made this argument nearly a year after the district court issued its summary judgment order. The district court refused to consider it due to its untimeliness. Because he did not raise this argument at the summary judgment stage, he has waived it on appeal.

[13] Defendants also argue that Prospect is not entitled to attorneys' fees expended during its prosecution of its counterclaims. We find no error in the district court's determination that "Prospect clearly explains how it has segregated its noncompensable fees incurred in prosecuting its counterclaims from those compensable fees for legal work relating to its summary judgment against Defendants." *Prospect Energy Corp*, 2011 WL 5864292, at *6.

14

Defendants' arguments lack merit.   The LLC Membership Interest Agreement expressly authorizes the recovery of "actual damages" for claims asserted in litigation under its provisions.   New York law deems litigation expenses incurred defending against actions brought in breach of a covenant not to sue to be actual damages.   *See id.* (applying New York law and finding litigation expenses "the most certain of all" damages stemming from breach of covenant not to sue); *see also Lubrizol Corp v. Exxon Corp.*, 957 F.2d 1302, 1305 (5th Cir. 1992) (endorsing *Artvale*'s general test for determining whether to impose liability under New York law for a breach of a covenant not to sue).   The agreement's inclusion of "actual damages" authorizes Prospect's recovery of attorneys' fees.

The district court did not misapply *Artvale* by allowing recovery without first finding bad faith.   In relevant part, the Second Circuit held that:

> In the absence of contrary evidence [in the contract that breach will entail liability for damages], sufficient effect is given the usual covenant not to sue if, in addition to its service as a defense, it is read as imposing liability only for suits brought in obvious breach or otherwise in bad faith.

*Artvale*, 363 F.2d at 1008.   The *Artvale* court made the requirement of obvious breach or bad faith contingent on an absence of evidence that the contract contemplated damages.   Here, there is no need to demonstrate obvious breach or bad faith because the LLC Membership Interest Purchase Agreement provided for "actual damages" that, under *Artvale*'s definition, include attorneys' fees.

Moreover, even if the district court did need to find obvious breach or bad faith, it had previously found that DGP's lawsuits "clearly violated the Release." *Dallas Gas Partners*, 2007 WL 1466833, at \*3.   Before the district court, the defendants never disputed that the lawsuits were clearly within the scope of the release and covenant not to sue, and thus were "suits brought in obvious breach"

15

of the covenant. *Artvale*, 363 F.2d at 1008. They argued only that they either were not bound by the release or that their involvement in the lawsuits did not qualify as a breach. The district court's conclusion that the defendants' breach was "'obvious' as a matter of law and [that Prospect was] entitled to actual damages," *Prospect Energy*, 761 F. Supp. 2d at 603, was not erroneous. Defendants' obvious breach of the covenant not to sue makes the award of attorneys' fees appropriate even assuming New York law requires obvious breach *or* bad faith.

Finally, the defendants seem to argue that the district court needed to find both obvious breach *and* bad faith. The language of *Artvale*, endorsed by this court in *Lubrizol*, forecloses the issue. *See Lubrizol*, 957 F.2d at 1306 n.6 ("Lubrizol argues that 'obvious breach or otherwise in bad faith' requires a separate finding of bad faith. Lubrizol shifts the emphasis to 'obvious breach *or otherwise* in bad faith.' To reiterate Judge Jones' reply to a similar argument made by Lubrizol, '[w]e cannot accept either the grammatical or linguistic underpinnings of this argument.'").

For the foregoing reasons, we affirm the district court's award of attorneys' fees to Prospect.

## C. Joint liability

The district court held that "the liability here is not several and that apportionment is not relevant to this case" because "here liability is based on the breach of a single contract to which all Defendants were signatories and they were all bound by its joint promise not to sue." Defendants appeal the district court's imposition of joint liability on two grounds. First, they argue that the covenant not to sue contained words of severance that showed the parties' intent to impose several obligations. Because the agreement provides that "[e]ach of the signatories" releases and covenants not to sue on any claim, defendants argue that it "states their obligations individually" rather than jointly. Second,

16

defendants contend that a joint obligation in the context of a negative covenant is "nonsensical." According to defendants, the "argument that each of the signatory's promises not to sue are a joint obligation would mean that [an individual signatory] would be individually liable even if he did not sue Prospect, but one or more of the other signatories did." We hold that the district court properly applied New York law in finding that the contract's language provides for joint liability.

> New York, like most jurisdictions, follows the rule:

> that an obligation entered into by more than one party is presumed to be joint. This presumption will not be overcome unless there are either (1) express words to render the obligation several or joint and several (often referred to as "words of severance"); (2) the terms of the promise considered in light of the surrounding circumstances indicate an intent to be bound severally, or jointly and severally; or (3) there is a statute that declares that every contract, though by its terms joint, is to be considered several as well as joint. . . . The rule under the Restatement Second is that when multiple promisors promise the same performance to the same promisee, they incur only a joint duty unless they manifest an intention to create several or joint and several duties.

12 Williston on Contracts § 36:4 (4th ed.) (footnotes omitted). New York law requires express words of severance to defeat the presumption of joint liability. S*ee, e.g.*, *United States Printing & Lithograph Co. v. Powers*, 135 N.E. 225, 227 (N.Y. 1922) ("[P]romises by two or more persons create a joint duty unless the contrary is stated. It is a general presumption of law that, when two or more persons undertake an obligation, they undertake jointly; words of severance being necessary to overcome this primary presumption."); *Wujin Nanxiashu Secant Factory v. Ti-Well Int'l Corp.*, 22 A.D.3d 308, 310-11; 802 N.Y.S. 2d 411 (1st Dep't 2005). "The enforcement of a joint obligation against several parties must necessarily lead to a verdict and judgment which are joint in their nature." *Powers*, 135 N.E. at 227.

Defendants argue that the release and covenant not to sue contained words of severance through the use of the singular "each." The LLC Membership Interest Purchase Agreement provides: "Each of the signatories hereto . . . covenants not to institute, maintain, or prosecute any action, claim, suit, proceeding or cause of action of any kind to enforce any of the MNW Released Claims." But use of the singular does not render an obligation several. *See Battery Assocs., Inc. v. J & B Battery Supply, Inc.*, 944 F. Supp. 171, 178 (E.D.N.Y. 1996) ("the requisite intent to be jointly and severally bound may be found where the guaranty is worded in the singular"); *Nat'l Sur. Co. v. Seaich*, 171 A.D. 414, 420, 157 N.Y.S. 422, 426 (1st Dep't 1916) ("Where the form of the contract is singular, but executed by two or more persons, it expresses the intent of the obligors . . . to hold such promise to be joint and several, and such is the rule."). As did the district court, we find no express words of severance to overcome the presumption of joint liability.

Nor are we persuaded that finding a joint obligation in the context of a negative covenant is nonsensical. Defendants do not cite to authority suggesting that the presumption of joint liability is limited to affirmative obligations, and we see no reason to read into New York law such a distinction. Muse, Nelson, and Weiss contracted to sell their membership interests in one document. It is not nonsensical for Prospect to have conditioned its purchase on a requirement that the three sellers covenant jointly to obey the agreement's mutual release. Because the LLC Membership Interest Purchase Agreement lacks of words of severance, we apply New York law's presumption that the parties created a joint obligation and affirm the district court's imposition of joint liability.

## CONCLUSION

We AFFIRM the district court's grant of summary judgment in favor of Prospect, its award of attorneys' fees, and its imposition of joint liability.