# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-40374

United States Court of Appeals
Fifth Circuit

**FILED**

October 19, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

DANIEL MELTON,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:16-CR-585-1

Before HIGGINBOTHAM, DENNIS, and COSTA, Circuit Judges.

PER CURIAM:*

Daniel Melton was found guilty after a jury trial of attempted coercion and enticement of a minor in violation of 18 U.S.C. § 2422(b). He was sentenced to 120 months of imprisonment and 25 years of supervised release, including a special condition prohibiting him from accessing the Internet, "except for reasons approved in advance by the probation officer." On appeal, Melton contends that the district court reversibly erred by commenting on the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

evidence during jury instructions, and argues that the condition restricting his Internet access is unreasonably restrictive and should be modified or amended. For the reasons discussed below, we AFFIRM Melton's conviction and AFFIRM the special condition of supervised release, subject to the interpretation that he is not required to seek prior approval each individual time he accesses the Internet.

**I**

In March 2016, Daniel Melton posted the following advertisement on Craiglist:

> Late 30s male seeking younger female that wants to be daddy's girl. Would love a young teen that needs to be trained or has little experience. If you want to be a daddy's girl respond with pics and some information about yourself. Put daddy as a subject to weed out spam.

An undercover Homeland Security Investigation Special Agent, Autumn West, responded to Melton's ad. West's first communication with Melton read: "My name is Nicole and my daughter[']s name is Kacie. Lucky for you, we[']re an incest family looking for an addition. Let me know." Over the course of the next two weeks, Melton and "Nicole" exchanged electronic correspondence almost every day via Yahoo messenger, email, and text messages. Throughout these conversations, "Nicole" made it clear to Melton that "Kacie" was a fourteen-year-old girl in the eighth grade. Melton frequently and directly expressed his interest in performing a variety of explicit sexual acts with both "Kacie" and "Nicole," and "Nicole" responded with enthusiasm. At one point, Melton sent "Nicole" a picture of his penis and then exchanged messages directly with West as "Kacie," asking her what she thought of it and discussing in explicit detail having her "play" with it.

Melton and "Nicole" arranged to meet at a Taco Bell, where Melton was promptly arrested upon arrival. Melton admitted to placing the advertisement

and confirmed that he was the one who sent the explicit messages in question to "Nicole" and "Kacie."  He confessed that he believed he was meeting a real mother and her minor daughter, and stated that he had "fucked up."  The defendant also told the officers that he had not originally sought an underage girl when he placed the Craigslist ad, and that by "young teen" he had meant an eighteen or nineteen-year-old interested in role playing.

Melton was charged with "knowingly attempt[ing] to persuade, induce, entice, and coerce an individual who defendant believed had not attained the age of 18 years, to engage in sexual activity for which a person can be charged with a criminal offense under the laws of the State of Texas, namely, the crime of sexual assault of a child."  18 U.S.C. § 2422(b).  At trial, Melton relied primarily on the defense of entrapment, alleging that he was not predisposed to commit the crime of enticing a minor until "Nicole" invited him to join her and "Kacie's" incestuous activities.  At Melton's request and over the Government's objection, the district court provided the jury with the Fifth Circuit's pattern jury instruction on entrapment:

> [I]f a person has no previous intent or purpose to violate the law, but he then is induced or persuaded by law enforcement officers to commit the crime, that person is a victim of entrapment.  And the law forbids a conviction there. . . . On the other hand, if a person . . . does already have the readiness and willingness to break the law, the mere fact that the government agents provide him with what appears to be a favorable opportunity is not entrapment."

Earlier in the jury instructions, the district court also made a comment that Melton challenges here on appeal.  In explaining to the jury that it must, in order to convict, find that the defendant enticed someone whom he believed was under the age of 18, the district court made the following statement:

> So—and here, that's why the Government in producing the case— the suggestion was and what the agent was offering was a child. *But the ad itself, as I recall the wording, you're going to have it there, also, suggested a desire for a minor.* But that's the point.  It

No. 17-40374

has to be a minor—the case has to involve somebody under the age of 18.  And there was stuff about a soccer game and the 8th grade.  And I think a thing about 14 years old, but anyway.  That's why all of that is in there. (emphasis added).

Melton did not object to this statement at trial.

The jury subsequently found Melton guilty.  At sentencing, the district court imposed 120 months of imprisonment, 25 years of supervised release, and a $1,500 fine.  Consistent with the recommendations in Melton's presentence report (PSR), the district court also imposed several special conditions of supervised release including, inter alia, a condition prohibiting him from accessing the Internet, "except for reasons approved in advance by the probation officer."

## II

Unpreserved objections to the district court's comments to the jury are reviewed for plain error. *United States v. Inocencio*, 40 F.3d 716, 728–29 (5th Cir. 1994).  Under this standard of review, Melton must establish a forfeited error that is clear or obvious and that affected his substantial rights.  *Puckett v. United States*, 556 U.S. 129, 135 (2009).  If he satisfies the first three prongs of the plain error analysis, we have the discretion to correct the error if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *Id.* (cleaned up).

Preserved challenges to special conditions of supervised release are reviewed for abuse of discretion.  *United States v. Caravayo*, 809 F.3d 269, 272 (5th Cir. 2015).  If challenges are not raised in the district court, review is for plain error only.  *See Puckett*, 556 U.S. at 135.

## III

Melton argues that the district court's comment during jury instructions that Melton's Craiglist ad "suggested a desire for a minor" caused him serious prejudice and thus was reversible error.  As Melton concedes, he did not

4

contemporaneously object to the district court's comment. Accordingly, we review for plain error only.

A trial judge is not limited to abstract instructions but may explain and comment on the evidence, draw attention to evidence which he thinks important, and express his opinion of facts, "provided he makes it clear to the jury that all matters of fact are submitted to their determination." *Quercia v. United States*, 289 U.S. 466, 469 (1933). "While the trial court may under no circumstances withdraw any element of an offense from the jury's consideration in a criminal case, the judge may comment on the evidence, so long as he instructs the jury that they are not bound by his comments." *Inocencio*, 40 F.3d at 729.

Even if a judge's comments do not effectively withdraw an element of the offense from the jury's consideration, they "may also be error if they seriously prejudice the defendant." *E.g.*, *id.* We evaluate the instructions to the jury "as a whole, without isolating statements which may appear prejudicial outside the context in which they were made." *United States v. Gomez-Rojas*, 507 F.2d 1213, 1223 (5th Cir. 1975). Comments that "distort or add to" the evidence are more likely to be prejudicial than those that state uncontradicted facts. *See Inocencio*, 40 F.3d at 730–31; *United States v. Canales*, 744 F.2d 413, 434 (5th Cir. 1984); *United States v. Blevins*, 555 F.2d 1236, 1240 (5th Cir. 1977).

Melton contends here that the district court's comment added to or distorted the evidence. However, even assuming arguendo that the district court did clearly or obviously err in its comment to the jury, Melton cannot demonstrate that it affected his substantial rights. Though the district court commented on an issue that Melton contested—whether the ad "suggested a desire for a minor"—we cannot conclude that the verdict would have been different otherwise. *See Canales,* 744 F.2d at 434 (finding no serious prejudice from judge's challenged comment to the jury because there was "no meaningful

possibility that the verdict would have been otherwise had the now complained of comment not been made.")  The jury had substantial evidence that Melton was predisposed to commit the crime of enticement.  Melton's conversations with "Nicole" and "Kacie" showed that he had a clear interest in having sexual relations with "Kacie" from the first mention of her.[1]  Further, Melton's argument that the reference to a "young teen" in the advertisement meant, in fact, an older teen, is simply not very persuasive.  Because the district court's comment therefore did not amount to reversible plain error, we affirm Melton's conviction.

## IV

Melton next argues that the district court abused its discretion by imposing a condition of supervised release prohibiting him from "access[ing] the Internet except for reasons approved in advance by the probation officer." He contends this condition is unreasonably restrictive because it requires him to request permission every time he needs to access the Internet, and he requests that it be remanded to the district court to modify or amend so that it is not construed in such a manner.

## A

Though the Government contends that Melton failed to preserve an objection to this condition, its argument is without merit.  "In order to preserve an argument for appeal, it must be raised to such a degree that the district court has an opportunity to rule on it."  *United States v. Brown*, 884 F.3d 281,

---

[1] Though his responses to "Nicole" do not conclusively prove that having sex with a child was his original intent and purpose, his rapid and eager responses that repeatedly focused on "Kacie" can certainly constitute evidence that sex with a child was his primary interest from the beginning.

No. 17-40374

284 (5th Cir. 2018). Our review of the record demonstrates that the district court was clearly on notice of the defendant's objection.

Defense counsel began the discussion about this condition by saying:

> We have some concerns about the conditions. We understand the mandatory conditions that – we have no quarrel with that. We would also, again, ask that the Court note our objection – or clarification is what we'd like. For example, for Internet use. The condition of Internet use as approved by the probation office. It sounds like a reasonable thing, but we would ask -- a notation in there that it is presumed that any legitimate Internet use is preapproved, for example.

The court then responded: "Well, that wouldn't work . . . that's just saying do anything you want to." After additional discussion about the scope and appropriateness of the condition, the district court imposed the condition at issue without modification. Defense counsel responded: "Again, we just ask the Court to . . . note our objection to that." Further, defense counsel again referenced this objection later at sentencing, noting "we know that *the Court has noted our objections* to the two prongs, *the Internet access* and the . . . Sex Offender Treatment after he comes out." (emphasis added).

It is clear that the district court was on notice of the specific content of the defendant's objection and not only had the opportunity to rule on it, but in fact did so. Accordingly, we review the challenged condition of supervised release for abuse of discretion. *See United States v. Caravayo*, 809 F.3d 269, 272 (5th Cir. 2015).

**B**

Melton challenges a special condition of his supervised release prohibiting him from accessing the Internet "except for reasons approved in advance by the probation officer." Conditions of supervised release must be reasonably related to the following statutory factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need to afford adequate deterrence to criminal conduct, (3) the need to protect the public

7

from further crimes of the defendant, and (4) the need to provide the defendant with needed training, medical care, or other correctional treatment in the most effective manner.

*United States v. Paul*, 274 F.3d 155, 164–65 (5th Cir. 2001) (cleaned up); *see* 18 U.S.C. § 3583(d); 18 U.S.C. § 3553(a)(1)–(2).  Additionally, "supervised release conditions cannot involve a greater deprivation of liberty than is reasonably necessary to achieve the latter three statutory goals."  *Paul*, 274 F.3d at 165; *see* § 3583(d)(2).  Melton does not argue that the condition is not reasonably related to the statutory factors; instead, he contends that the condition is "unreasonably restrictive" under § 3583(d)(2).

We have routinely upheld special conditions of supervised release similar to Melton's.  *See United States v. Ellis*, 720 F.3d 220, 225 (5th Cir. 2013); *United States v. Miller*, 665 F.3d 114, 124, 132-34 (5th Cir. 2011); *Paul*, 274 F.3d at 169–70.  However, Melton does not request that we vacate the condition entirely.  Instead, he requests that it be modified or amended "so that it is not construed or enforced in such a manner that Mr. Melton would be required to seek prior approval of the probation officer every single time he must access the Internet."

In support, Melton cites to *United States v. Sealed Juvenile*, 781 F.3d 747, 756 (5th Cir. 2015).  In that case, we addressed a substantially similar condition prohibiting the appellant from "us[ing] a computer with access to any 'on-line computer service' at any location without the prior written approval of the probation officer."  *Id.* at 755.  As we noted in *Sealed Juvenile*: "We must recognize that access to computers and the Internet is essential to functioning in today's society.  The Internet is the means by which information is gleaned, and a critical aid to one's education and social development."  *Id.* at 756.[2]

---

[2] *See also United States v. Duke*, 788 F.3d 394, 400 (5th Cir. 2015) ("The ubiquity and importance of the Internet to the modern world makes an unconditional, lifetime ban

Therefore, we concluded that the condition was unreasonably restrictive "*[t]o the extent* [it] require[d] [the appellant] to request permission . . . *every time* he needs to access the Internet," and affirmed the condition subject to our interpretation that approval for each instance of Internet access was not required. *Id.*

We find that a similar result is warranted here. From the record before us, it is not clear whether Melton's condition as written would require a separate pre-use approval by his probation officer every single time he accesses the Internet, as Melton claims it does, or only requires preapproval for categories of use, as the Government contends. As *Sealed Juvenile* demonstrates, an otherwise permissible condition limiting Internet access can be unreasonably restrictive if given the more austere of these two interpretations. Accordingly, as in that case, we affirm Melton's condition subject to the interpretation that "prior approval" does not require that he obtain individual approval from his probation officer for each specific instance of Internet use. *See id.*

## V

For these reasons, we affirm Melton's conviction and affirm the condition of supervised release restricting his Internet access subject to the above interpretation.

---

unreasonable. Although this court has not found the Internet to be so integral to modern life that a district court may not restrict its use, it has observed, along with many sister circuits, that computers and the Internet have become significant and ordinary components of modern life as we know it." (citations omitted)).